C. W. OGBURN Adm'r v. N. H. D. WILSON, Guardian, et. al.

*Deed, Construction of—Creditors—Guardian and Ward—Preference—Subrogation.*

W. was partner in the banking house of W. & S.; he was also the guardian of three infants, and, as such, lent to the banking firm a portion of his wards' funds, taking a certificate of deposit to himself as guardian. Upon the arrival at majority of the oldest ward he was paid off, but before the others became of age, the firm and guardian failed and made assignments, to secure creditors. In the individual assignment of the guardian, it was provided that any balance due to him, as guardian of his two remaining wards, upon the certificate aforesaid, after being credited with its share of the firm assets, should be paid. Subsequently he paid off another of his wards, upon its arrival at majority, and thereafter he received the dividends from the firm assets, applying two-thirds to his own use, and one-third to the credit of the sole remaining ward. The representative of the latter brought suit against the trustees and subsequent preferred creditors, claiming the entire sum of the certificate; *It was held*, 1. That the plaintiff was only entitled to a moiety of the certificate thus secured. 2. That the effect of the settlement of the guardian with the other wards, was to discharge the indebtedness *pro tanto*, and he will not be allowed to come in and share in the dividends of his own estate. 3. Had the sureties of the guardian paid the wards they would have been entitled, by subrogation, to participate in the dividends.

(*State ex rel. Whitford* v. *Foy*, 65 N. C., 273, cited and approved).

This was an action tried before *Gilmer, Judge,* at August Term, 1885, of GUILFORD Superior Court, involving the construction of a deed in trust to secure creditors, and the application of assets thereunder.

A jury trial having been waived, the facts were found by the Court, who gave judgment for the plaintiff, and directed that his demand should be paid in full.

From this judgment the defendant Mary J. Wilson appealed.

The defendant N. H. D. Wilson, by virtue of his appointment as guardian to William, Ella and Charles Barringer, in 1873, came into possession of funds belonging to them in the amount of six thousand dollars, with their respective shares of which he charged himself in separate accounts with each. Of this sum, in August, 1874, he received thirteen hundred and seventy-six dollars and eighty-two cents, which he deposited in the banking house of Wilson & Shober (in which he was himself the senior partner) taking therefor an interest bearing certificate of deposit in his own name as guardian, without designating his wards, and forthwith gave each a money credit for their respective parts. On October 9, 1876, William, having attained his majority, had a settlement with his guardian, and the whole of his estate was paid over to him, inclusive of that due on the deposit.

On October 9, 1876, both the firm and Wilson becoming insolvent, made assignments of the partnership and individual property of Wilson to the defendants R. M. Sloan and F. E. Shober and W. P. Bowman, intestate of the defendant Julius A. Gray, in trust to secure, the one the joint liabilities, the other the individual liabilities of the partner Wilson. The deed of the latter, in its declarations of trust, provides for the payment, first, of such bills and accounts as may be due to merchants in Greensboro, and then, in the words of the instrument, for, "2nd, any balance, if any, that may be found due and payable to N. H. D. Wilson, guardian of Charles and Ella Barringer, upon a certificate of deposit issued by Wilson & Shober, after said certificate has been credited with full *share* and *pro rata* of the assets of said Wilson & Shober."

The next indebtedness, to which preference is given, is a note described as due to R. R. Gwynn, for about six or seven hun-

dred dollars, originally, since assigned and now belonging to the defendant Mary, wife of the said N. H. D. Wilson, and then the proceeds of the trust estate are directed to be apportioned *pro rata* among the other creditors.

On the first day of October, 1879, the infant Ella became of full age, and had also a settlement with her guardian, in which she received her estate in full, including her part of the sum due on the certificate of deposit.

Charles, the remaining ward, died under age in July, 1880, and the plaintiff took out letters of administration on his estate in March, 1882, and in January, 1884, commenced the present action.    He had previously sued on the guardian bond, and at Fall Term, 1883, recovered twelve hundred dollars, the balance due his intestate upon the administration of the trust estate, no part of which can be made out of the guardian by reason of his insolvency.

The trustees, out of the firm assets, have paid over to Wilson three dividends on the certificate, each of one hundred and eighty dollars, the first being received December 13, 1880, for the intestate Charles; the other two, September 12, 1882, and January 2, 1884, for himself, he claiming the right to receive these because of his having paid off the full amount of his liabilities to the other wards.

The trustees have paid over upon the certificate, out of assets derived from the joint estate, the sum of two hundred and fifty dollars, and have in hand enough to satisfy the amount due on the judgment, if so directed by the Court, in preference to the claim of the defendant Mary, as assignee of the Gwynn note, rendering the taking of an account unnecessary for the use of the plaintiff.

*Messrs. Graham & Ruffin, J. A. Barringer* and *Scott & Caldwell,* for the plaintiff.

*Mr. J. T. Morehead,* for the defendant.

SMITH, C. J. (after stating the facts as above). The matter in controversy is as to the contesting demands of the plaintiff and the assignee Mary, upon the fund in the hands of the trustees, and this depends upon the construction of the second declaration of trust in the assignment, which has been recited.

The plaintiff contends that inasmuch as the claims of the two older wards have been extinguished, the certificate representing the joint property, in its entirety, belongs to the intestate, and as such must be paid to him.

The defendant Mary insists that the interest of the infants in the money represented in the certificate are several and distinct, each being entitled to his ratable part only; and hence that the interests of two have been extinguished and their shares fall into the *residuum* of the trust fund and belong to her as next in priority; and further, if this be not so as to two-thirds, it is as to a moiety, as the security of the deed is for Ella and her deceased brother.

Now the argument for the plaintiff would be difficult to combat, as to the right disposition of the money, if the whole case depended on the form of the certificate and payment was coerced out of the debtor. But the question is as to the appropriation, under the trust deed, of the money in the trustees' hands, now that two of the infants have been settled with, and one only remains to assert his claims. Is he entitled to *all* which the certificate calls for or *his part only?*

Now it is manifest that it is secured in the assignment for the sole benefit of Ella and Charles and to Wilson as *their guardian,* excluding the older brother from participating in what may be received. They only are named as the beneficiaries for whom the guardian proposes to act, and their interests he protects out of his own estate. But a moiety only belongs to the intestate and a moiety only is secured to him.

The other moiety would belong to Ella, but that she has received all her estate and can now assert no right to a share of the fund. If Charles had also been paid, the indebtedness evidenced

by the certificate would cease to exist altogether and would be put out of the way of the assignee Mary, in her asserting her claim next after the bills due in Greensboro.

As this would be true of all, so it would be true of any extinguished share of either. The intestate's right was, when the deed was executed, confined to one-half of the debt, and it remains undisturbed by subsequent changes.

If a surety upon the guardian's bond had paid the judgment recovered on it, he might by subrogation claim the fund distributable to Charles, as he might that belonging to Ella if he had paid her. But the payment by the principal debtor is a discharge of the debt and he is not allowed to come in and share in the division of his own estate and thereby diminish the trust fund created by his own act to the prejudice of the more remotely secured creditors.

This separation of interest seems to be indicated in what fell from RODMAN, J., delivering the opinion in *State ex rel. Whitford* v. *Foy,* 65 N. C., 273.

"These wards," he proceeds to say, "were equally interested in a common fund and must bear all losses affecting it equally. So long as all remained infants, each was entitled to have his share of the fund bear compound interest, but when any one ceased to be entitled to this privilege of an infant, by death or marriage, the share of that one becoming immediately demandable, ceased to bear any more than simple interest, although if the guardian receive more, he would be liable to pay it."

The controversy hinges upon an interpretation of the deed, and the intention of the parties to it. Does it upon a fair rendering of the second declaration of trust secure to the intestate, more than a moiety of the deposit—and is there any just reason for allowing him to succeed to what is secured to his sister? It is not a question of survivorship, but of construction and purpose in reference to the application of the trust fund, and we think the intestate entitled to one-half of what would have been distributed if Ella had not received her full estate.

The plaintiff has no interest in the alleged wrongful payments to Wilson, since they are only injurious to creditors of the third class, and no controversy is made in this action by them.

There is error in the judgment and it will be entered for one-half of the sum due under the certificate against the trustees.

Error.                                                    Reversed.